## COLGAN *vs.* AYMAR et al.

Plaintiff was clerk in a sugar refinery of one B.; defendants were B.'s factors, and, as such, made him advances, and held some machinery of the establishment in pledge. Subsequently B. became insane, and defendants told the superintendent of the establishment to continue the work, employing the necessary hands. He retained plaintiff as clerk. *Held*, in an action by plaintiff for work and labor, that defendants' liability to him was a question for the jury.

ERROR from the New York common pleas. Colgan recovered against Aymar and others in an action for his services as clerk in a sugar refining establishment. The refinery was at Jersey City. It was in the month of February conducted by one Bevan as proprietor, who had employed Colgan as clerk on a yearly salary. The defendants were factors for Bevan in New York city; were to buy raw material, make advances, sell sugar refined; and they held certain machinery of the establishment in pledge. In June, Bevan became insane; the defendants went to the refinery and told Mapes, the superintendent, to go on and work up the house with as few hands as possible, and to employ such as were necessary; the superintendent thereupon told Colgan to remain. He did so till November following.

At the close of plaintinff's evidence, defendants' counsel moved for a nonsuit, on the ground that no case had been made out to fix the defendants with liability. The court overruled the motion and left the question of liability, or not, to the jury. There was a verdict for plaintiff to the amount of his services as proved.

*By the Court,* COWEN, J. The question is whether the court below should have nonsuited the plaintiff on the ground that he had clearly failed to make out by his proof a case for the jury. The course taken by the defendants below, indicates that they had a considerable pecuniary interest in the work of the refinery going on; and were satisfied it could not continue without their personal interference. Whether they were satisfied that even more was required, viz., the pledging of their own responsibility, and therefore gave directions to employ hands with intent to become personally answerable, was, it seems to me, a proper question for the jury. The plaintiff probably continued his services in consequence of such directions. His master had become insane, and perhaps his payments would not have been kept up as usual; circumstances which the defendants themselves seem to have been aware must have resulted in the departure of hands and the consequent discontinuance of the business, unless prevented by a distinct retainer under their directions. It is said that the plaintiff was already retained by Bevan. That did not necessarily prevent his going into the service of the defendants; nor necessarily preclude an intent on their part that he should. Suppose they had retained him in their commission business at New York, even in wrong of Bevan, their obligation to pay would not legally have been less for that reason. Their obligation was just the same, if they intended to transfer his service in the refinery from Bevan to themselves. In doing so, there was neither a legal nor moral impropriety under the circumstances, but the contrary; and the jury were, therefore, left more free to infer that it was intended. The defendants derived a pecuniary benefit and the plaintiff a loss by his remaining.

Judgment affirmed.